GReen, J.
delivered the opinion of the court.
The legislature of this State, by act of. 1831, ch. 68, p. 59, incorporated a company to construct a turnpike road from the town of Franklin to Columbia. That act referred to the act of 1829, ch. 205, p. 159, for the powers, privileges, and liabilities to be enjoyed and incurred by the said companies.
Under this act the road was not constructed, and the legislature* by the act of 1835, ch. 14, p. 101, revived the former act, appointed other commissioners, and for the powers and pivileges to be enjoyed, and liabilities to be incurred, they again refer to the aforesaid act of 1829, incorporating the Nashville and Franklin Turnpike Company, and declare that this company shall possess the' same. The proviso of the fourth section of the act of 1835, makes it the duty of the commissioners, appointed to designate the route of the road, “to run it along the shortest and best route between the towns of Franklin and Columbia.” The fifth section provides,that the corporation may establish toll gates not exceeding five, but that no gate-shall be in less than two miles of the towns of Franklin and Columbia.
By the 7th section of the act of 1829, before referred to, it is provided, that the road shall be constructed as therein particularly described; and when finished or completed for the distance of at least seven miles from the town of “Franklin” or “Columbia,” the President and Directors may apply to the Governor of the State? whose duty it shall be to appoint three commissioners to view and examine the road, and on a' report of the majority of said viewers, that the road had been completed for the said distance as directed in the act, the Governor should issue his certificate, author-1 izing the erection of two toll gates, one within two miles of the town, and the other in five miles of the first gate; and for each additional five miles that might thereafter be completed, upon a similar report of viewers, and certificate of the Governor, an additional gate might be erected.
On the 26th day of February, 1840, the Governor issued his certificate, reciting, that it had been certified to him by two of the commissioners appointed to view and examine twelve miles of the Franklin and Columbia turnpike road, commencing at “the end of the Columbia bridge;” that twelve miles of said road, commencing as above, had been completed; he, therefore, authorised the com *469 pany “to erect toll gates on that part of the road so completed and finished as aforesaid, according to the provisions of the charter.” A gate was then erected on the road at the distance of two miles from Columbia, and the other distances specified. During the montli of May, 1840, the defendant passed through the gate,- in two miles of Columbia, and refused to pay the toll that was demanded. He was sued in the name of the company, for the amount of said toll, (25 cents,) before a justice of the,peace, where judgment was given against the company, An appeal was taken to the circuit court of Maury, where a verdict and judgment were rendered for the defendant, and the plaintiffs appealed to this court.
On the trial in the circuit court, it .appeared in evidence, that the end of the Columbia bridge, at which the commissioners commenced viewing the road, and to which, for twelve miles towards Franklin, the Governor certified it had been completed, is not the boundary of the town of Columbia; that from the point at which said road, as constructed, terminates, to the town of Columbia, the distance is one hundred and fifty yards, and that Duck river runs between the termination of said road and Columbia.
Upon this state of facts, the question is, had the company a right to erect the gate and exact toll at the time the defendant passed through said gate 1 Many questions have been discussed with great earnestness and ingenuity, which we think the court is not called uptin to decide, in order to' the determination of this controversy.
Whether five gates are allowed, by a just construction of these several acts, upon this road, we need hot decide, for if all the other gates have been improperly erected, it will avail the defendant nothing, provided the one nearest Columbia is properly there, so as to authorise a demand of toll. Nor do we think any informality, or deviation from the “nearest and best route,” in laying out the ground upon which the road was constructed, is a question which the defendant can raise against this suit. The provision, that the shortest and best route should be designated by the commissioners, was directory to them, but was not intended to invalidate any designation they might make, that should fail to attain these ends. It is true, if any very considerable deviation from this direction, had been attempted, so as to place the road upon the lands of persons, upon whose lands the shortest and best route would not have placed it, such persons, if they had felt aggrieved, might have restrained the company, by the aid of the injunction powers of a *470 court of chancery, from proceeding in such unauthorised construction of the road. To justify such proceeding as this, the deviation must have been flagrant and manifest. But this is a question that cannot concern the traveller on the road, after it shall have been constructed. To. permit such an investigation, would necessarily involvé an inquiry into every requisition of the charter, in relation to the manner in which the road should be constructed, and would create interminable investigations in relation to distance, goodness of route, &c. It must be perceived at once, that such investigations, in every suit for twenty-five cents of toll, would be most absurd.
The only question involved in the present case is, as to the right of the company to erect the gate through which the defendant passed. And in the solution of this question, the first inquiry is as to the termini of the road!
By the company it is contended, that the charter of incorporation does not designate any termini; that the company was left at liberty to make a terminus at any point they., chose between Franklin and Columbia.
The act of 1831, and that of 1835, are alike entitled, “An act to incorporate the Franklin and Columbia Turnpike Company,” and the pi’oviso of the fourth section of the act of 1835, makes it the duty of the commissioners to run the road, “along the shortest and best route, between the towns of Franklin and Columbia.” The meaning evidently is, that the road is to be constructed the whole distance, between the two towns. Why is seven years given the company to finish the work, if there is no particular work designated?
It must be plain, that if the company can make a terminus one hundred and fifty yards before they reach Columbia, they could, with equal legal propriety, stop ten miles short of Columbia. If, therefore, they may stop where they please, they might choose to say at the expiration of seven years, that they had finished their work, though no more than twelve miles of the distance had been constructed. Nor is it to be supposed, that the legislature, when this company was incorporated for the public benefit, and the rates of toll were designated, could have intended to leave it to the discretion of the company, what part of the route between Franklin and Columbia they would select and construct their road upon. The rates-of toll were fixed in reference to the cost of the'work. *471 The object of permitting the collection of such large toll at the distance of every five miles, was, that the company might be remune-» rated for their outlay, by the receipts of these gates.
In order that the toll should be adjusted equitably, as regards the road company and the travelling public, the legislature must have taken into consideration, the labor and expense of construction, along the whole route, the excavation of hills, the expense of bridges, &c. If the company were permitted to take any given distance between the two towns, where there were no- streams to bridge, no hills to level, and plenty of material for covering the road convenient, they might construct, the road for less than half the estimated cost per mile, of the whole road, and thus receive double the toll to which they would be justly entitled. Besides, of what advantage would such a road be to the public, constructed over the best ground, when the natural road would have answered very well, and leaving unimproved that part of the route, in reference to which, the legislature might have-been induced to pass the law? It must be borne-in mind, that these corporations are created for the public benefit, and the- profit they are permitted to make, is only intended to induce them to labor for the public good, and to remunerate them for such labor. It cannot, therefore, be presumed, the legislature intended to leave a discretion to this company, by which they would be enriched by exactions from the public, without conferring upon the public a corresponding benefit.
These suggestions are made to show how absurd it would be to permit thé commissioners to select any point they might choose for the terminus of the road. For it must be seen, that the same argument that would justify them in making the terminus at the Columbia bridge, would have justified them equally in making it five or ten miles from Columbia. The authority to erect five gates on this road, conferred by the fifth section of the act of 1835, the whole distance of which, is proved to be only twenty-three miles, when by the seventh section of the act of 1829, said gates are required to be at the distance of five miles from each other, is conclusive, that the legislature contemplated the construction of a road, the whole distance between Franklin and Columbia.
So the provision in the 7th section of the act of1829, that “when the road shall be finished and completed for the distance of at least seven miles from the town of Nashville [Columbia] or Franklin, the Governor” is to authorise the erection of two gates, is conclu *472 sive, that these towns were regarded as the termini of the road. But we think the language, itself, of the proviso of the 4th section, “the shortest and best route between the towns of Franklin and Columbia,” designates, by its own proper force, these two towns as the termini of the road, so that this road must be constructed to the town line of Columbia, not to the court-house. This being established, the next inquiry is, what effect the Governor’s certificate is to have in this case?
The judge below, told the jury, that it -was prima facie evidence of the facts stated in it; but he refused to tell the jury, that the said certificate was conclusive evidence of the right of the plaintiffs to erect the gate and demand toll.
In this, we think the court was correct. The certificate of the Governor is certainly not evidence of the existence of. facts which it does not state, and which in fact, it expressly excludes.
It states that the road was finished from the Columbia bridge, for twelve miles, and that gates might be erected as prescribed by the charter. Let that fact be established, and then the inquiry recurs, will the existence of that fact authorise the erection of this gate ?
The charter says, that “a gate may be erected in two miles of Columbia, when the road shall be finished for the distance of seven miles from that place.” But it is most clear, that unless the road be finished for that distance from Columbia, the gate in question, could not be legally erected. What the charter does not authorise, cannot be done, so as to confer a privilege. As the- Governor’s certificate does not say, that the road is finished for seven miles, and the evidence is most clear that it is not finished for that distance, surely it must be manifest, that a privilege granted on condition that it should be so finished, cannot attach to the company.
But it is said, the road terminates at the bridge; that said bridge belongs to the county of Maury; that the company have no right to this bridge, or to tear it down; and, therefore, to require them to finish the road, is requiring what they cannot do.
In the first place, if they have chosen to place themselves in a position in which they cannot, according to the charter, erect the gate in question, it is their own folly. But in the next place, they might, and yet may, so construct their road, as to cross the river, either above or below this old county bridge.'
The act of 1823, creates no right in the county court of Maury, *473 in relation to the bridge, that might not be abridged, or taken away altogether by a subsequent act; and the erection of a bridge contiguous to the old one, by the turnpike company, will not interfere with any right of the county court of Maury.
We are, therefore, of opinion, there is no error in the judgment of the circuit court, and order that it be affirmed.